**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Daniel Evan Wacht, | ) | |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:15-cv-092 |
| Colby Braun, Warden, NDSP, | ) | |
| | ) | |
| Respondent. | ) | |

Before the court is a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a

Person in State Custody filed by petitioner, Daniel Evan Wacht ("Wacht") and respondent's Motion

to Dismiss. For the reasons set forth below, the undersigned recommends that Wacht's petition be

denied and respondent's motion be granted.[1]

## I.    BACKGROUND

### A.    Trial

On January 7, 2011 a Criminal Complaint was filed in the district court for Griggs County,

North Dakota, charging Wacht with Murder, a class AA felony. (Ex. 2). A Criminal Information

was subsequently filed on May 27, 2011. (Ex. 1). An Amended Criminal Information was filed on

January 30, 2012. (Ex. 7). A Second Amended Criminal Information was filed on February 3,

2012.

On November 30, 2011, Wacht filed a motion and brief to suppress evidence obtained

pursuant to the search warrants dated January 5, 2011. (Ex. 6). A hearing on Wacht's motion to

---

[1] The relevant state-court records are filed at Doc. No. 9 and will be referred to herein by their respective exhibit numbers.

suppress was held on January 19, 2012. (Ex. 10).  On January 24, 2012, the district court filed a memorandum and order denying Wacht's motion to suppress.  (Ex. 11).

On April 24, 2012, the jury found Wacht guilty of Murder.  (Ex. 19).  Wacht was sentenced to life without parole on August 1, 2012.  (Ex. 20).

**B.      Direct appeal**

Wacht appealed his conviction to the North Dakota Supreme Court on August 13, 2012.  (Ex. 21).  Wacht raised several issues on appeal, some of which were presented by appellate counsel and some of which Wacht raised in a *pro se* supplemental brief.  (Exs. 23 and 24).  Wacht argued: (1) the trial court erred in denying Wacht's motion to suppress evidence obtained from the illegal searches of Wacht's van and residence; (2) the trial court erred in denying Wacht's motion to exclude evidence under Rule 404(b) of the North Dakota Rules of Evidence; (3) there was insufficient evidence on which to find Wacht guilty beyond a reasonable doubt; (4) evidence was admitted in violation of Rule 16(c) N.D.R.Crim.P. and/or without foundation; and (5) Wacht's constitutional right to a fair and impartial jury was violated.  ( Id.).  On July 18, 2013, the North Dakota Supreme Court rejected Wacht's claims and affirmed his conviction. State v. Wacht, 2013 ND 126, 833 N.W.2d 455 ("Wacht I").

**C.      State postconviction proceedings**

Wacht next filed an application for postconviction relief with the district court on January 15, 2014, claiming that (1) newly discovered evidence showed a State's witness fabricated his trial testimony, and (2) his counsel was ineffective.  (Ex. 27).  The State filed an answer to Wacht's application for postconviction relief and also moved for summary disposition.  (Exs. 28 and 33).

On October 1, 2014, the district court summarily dismissed Wacht's application for postconviction relief. (Ex. 37).

Wacht appealed the order dismissing his postconviction application. (Ex. 38). On June 11, 2015, the North Dakota Supreme Court affirmed the district court's dismissal of the postconviction application. Wacht v. State, 2015 ND 154, 864 N.W.2d 740 ("Wacht II").

### D. Federal habeas petition

After exhausting his state-court remedies, Wacht filed his § 2254 petition with this court. Wacht's petition raises five different grounds for relief. In his first and second grounds for relief, he alleges that his Fourth Amendment rights were violated because there were illegal searches of his vehicle and residence and surrounding property. (Doc. No. 1 at 5-6). In his third ground for relief, he alleges that his Sixth Amendment right to a fair and impartial jury was violated. (Doc. No. 1 at 8). In his fourth ground for relief, he alleges that evidence was presented in violation of state and federal criminal procedure rules and in violation of his right to due process. (Doc. No. 1 at 9). In his fifth and final ground for relief, he alleges that his trial attorney was ineffective for multiple reasons. (Doc. No. 1 at 11).

### E. Evidence supporting Wacht's conviction

The following factual summary, taken verbatim from the decision of the North Dakota Supreme Court on direct appeal, is set forth below:

> [¶ 2] Kurt Douglas Johnson was reported missing to Griggs County Sheriff Robert Hook on January 4, 2011 by his cousin, Murray Stokka. After determining that Johnson was last seen on December 31, 2010 with Daniel Evan Wacht, Sheriff Hook obtained a search warrant to search Wacht's van on January 5, 2011 at 12:25 a.m. The evidence presented to the district judge to obtain the search warrant was contained in affidavits from Sheriff Hook and Bureau of Criminal Investigation Agent Arnie Rummel.

[¶ 3] Sheriff Hook's affidavit set forth the events leading up to the night Johnson was reported missing. Murray Stokka, Johnson's cousin, contacted Hook to report that Johnson was missing. The last time anyone had seen Johnson was at the Oasis bar in Cooperstown on December 31, 2010. Johnson appeared to be drunk and was causing a disturbance at the bar. The bartender threatened to call the sheriff. Wacht was also at the Oasis, and offered to give Johnson a ride home. Tim Vincent, later identified as a patron of the Oasis bar on December 31, 2010, told the sheriff that he helped Wacht get Johnson out of the bar, and Wacht proceeded to throw Johnson into the van. Johnson was never seen again. Johnson's family thoroughly searched his house for him, including inside the cupboards, but did not find him. Sheriff Hook also searched Johnson's house and did not find him. The person who does Johnson's snow removal said there were no footprints in the snow when he came to shovel on January 1, 2011. Wacht is employed by Sheyenne Tooling in Cooperstown, and Tim James, his supervisor, stated Wacht had not reported for work since December 23, 2010 because his mother had died in California. An informant said Wacht told the informant he was shopping in Fargo. Sheriff Hook called Wacht's cell phone and it sounded like Wacht was driving. Wacht stated that he dropped Johnson off at the Fish Bowl bar in Cooperstown at 11:30 p.m. on December 31, 2010, and "[n]o one saw me do it." Ron Berge Jr. stated that Wacht told him Wacht took Johnson to Wacht's own home and was there for some time while Johnson was passed out in Wacht's van, then dropped Johnson off at the Fish Bowl bar. No one saw Johnson at the Fish Bowl bar that night. Sheriff Hook spoke with his deputies and they stated they received a call requesting assistance because Wacht was stuck in a ditch. Wacht reported he had been at his buddy's place, gesturing toward the Richard Sutcliffe farm. Wacht adamantly refused to allow the deputies anywhere near his van, which was the same van where Johnson was last seen. The deputies gave Wacht a ride home.

[¶ 4] Agent Rummel's affidavit recited Wacht's criminal background since 2001, including charges of grand theft auto, burglary, force with a dangerous weapon, use of a firearm or animal during a theft, taking a vehicle without owner's consent, possession and transport of a controlled substance, parole and probation violations, felon in possession of a firearm, willful discharge of a firearm with gross negligence, and manufacture or possession of a dangerous weapon. Agent Rummel also stated Wacht had an outstanding warrant in California for [a] probation violation, and that he believed Wacht has violent tendencies.

[¶ 5] After staking out Wacht's home and work, law enforcement arrested Wacht pursuant to the California warrant outside Sheyenne Tooling on the morning of January 5, 2011. When Wacht was arrested, he was in possession of a stolen Glock 9mm handgun. Wacht was interviewed by Agent Rummel, and he admitted Johnson was in his van on New Year's Eve. Wacht also stated that he believed he had a Second Amendment right to possess firearms regardless of his probation conditions. The police towed Wacht's van to a local body shop and sealed it to preserve the

evidence. When they searched the van, they found an envelope containing five spent rifle shells and ammunition for a rifle. Agent Rummel then applied for a search warrant to search Wacht's home for firearms, weapons, and ammunition. His affidavit stated they found ammunition for a rifle in Wacht's van, that Wacht had told officers he believed he had a constitutional right to possess firearms despite his criminal convictions and probation conditions, and that an informant told Rummel about an incident in which Wacht had shot through a coffee table inside Wacht's house. The affidavit also stated that Wacht was under surveillance from the time he left his home to the time he arrived at work, and that Wacht admitted that he brought a gun to work on a regular basis. The search warrant was granted.

[¶ 6] Law enforcement searched Wacht's house, discovering more firearms and ammunition. They also found a blood stained couch cushion in a garbage bag in Wacht's laundry room. Law enforcement applied for and obtained another warrant to search the house for evidence of Johnson. That search uncovered Johnson's decapitated head buried in the crawl space under Wacht's house, as well as a bullet casing, bloody pillow, and several items with Johnson's DNA on them. Wacht was charged with the murder of Kurt Johnson.

Wacht I, 2013 ND 126, ¶¶ 2-6.

## II.     GOVERNING LAW

### A.     Scope of review

Under 28 U.S.C. § 2254, a federal court may review state-court criminal proceedings to determine whether a person is being held in custody in violation of the United States Constitution or other federal law.  However, where the state court has adjudicated the federal claim on the merits, this court's review is limited by 28 U.S.C. § 2254(d) to a determination of whether the state court's decision is (1) directly contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding.  See 28 U.S.C. § 2254(d); see generally Harrington v. Richter, 562 U.S. 86, 97-100 (2011) ("Richter"); Williams v. Taylor, 529 U.S. 362, 399-413 (2000).

This highly deferential standard of review is often referred to as "AEDPA deference" because it was enacted by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). E.g., Pederson v. Fabian, 491 F.3d 816, 824-25 (8th Cir. 2007); see generally Renico v. Lett, 559 U.S. 766 & 773 & n.1 (2010). The reasons for the limited review are ones of federalism and comity that arise as a consequence of the state courts having primary responsibility for ensuring compliance with federal law in state criminal proceedings. See, e.g., Richter, 562 U.S. at 103.

B.      The exhaustion requirements

The exhaustion doctrine codified at 28 U.S.C. § 2254(b)-(c) precludes granting habeas relief for claims that have not been properly exhausted in the state courts. E.g., Rhines v. Weber, 544 U.S. 269, 274 (2005); Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001). Proper exhaustion has two components. First, the claim must be "fairly presented," which requires that the petitioner present both the factual and legal premises for the claim, with the latter being satisfied if there is a reference to the particular federal constitutional right or a citation to a state or federal case that raises the constitutional issue. Dansby v. Norris, 682 F.3d 711, 722-23 (8th Cir. 2012), vacated on other grounds, Dansby v. Hobbs, No. 12-8582, 2013 WL 506561 (U.S. June 3, 2013); Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir. 2007). Second, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addition, there are three other aspects of the exhaustion doctrine that are important. The first is that the exhaustion doctrine is satisfied if there are no state-court remedies available and exhaustion would be futile, such as when the claim has been procedurally defaulted at the state-court level. E.g., Armstrong v. Iowa, 418 F.3d 924, 926-27 (8th Cir. 2005). The second is that Rose v.

Lundy, 455 U.S. 509 (1982), prohibits a petitioner from proceeding with a "mixed petition" of exhausted and unexhausted claims. See also Rhines v. Weber, 544 U.S. at 273-74. The third is that § 2254(b)(2) authorizes the court to deny a claim on the merits notwithstanding a failure to exhaust. E.g., Gringas v. Weber, 543 F.3d 1001, 1003 (8th Cir. 2008).

## C.     Procedural default

A federal district court is precluded from substantively considering a habeas claim that has been procedurally defaulted at the state level on independent and adequate state grounds. E.g., Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). State procedural grounds are independent and adequate if they are firmly established, readily ascertainable, and regularly followed. Barnett v. Roper, 541 F.3d 804, 808 (8th Cir. 2008); Franklin v. Luebbers, 494 F.3d 744, 750 (8th Cir. 2007). They must also further a legitimate state interest and not be applied in an exorbitant manner. Barnett, 541 F.3d at 808.

The rule barring procedurally-defaulted claims is nearly absolute. Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007). The only exceptions are the rare instances when a prisoner is able to meet the strict cause and prejudice or actual innocence standards. E.g., Dretke v. Haley, 541 U.S. 386, 392-93 (2004); Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012).

## D.     State defenses of res judicata and misuse of process

Under N.D.C.C. § 29-32.1-12, res judicata and misuse of process are affirmative defenses in state proceedings for postconviction relief. Res judicata is defined in subsection (1) to be a claim that was fully and finally determined in a prior proceeding. Misuse of process is defined in subsection (2)(a) to include any "claim for relief which the applicant inexcusably failed to raise either in a proceeding leading to a judgment of conviction and sentence or in a previous

postconviction proceeding[.]" These defenses are regularly enforced by the North Dakota courts. E.g., Tweed v. State, 2011 ND 228, ¶ 12, 807 N.W.2d 599; Steen v. State, 2007 ND 123, ¶¶ 13-17, 736 N.W.2d 457; Laib v. State, 2005 ND 187, ¶¶ 6-7, 705 N.W.2d 845.

## III. DISCUSSION

### A. Grounds one and two: illegal searches and seizures

In his first and second grounds for relief, Wacht claims that his Fourth Amendment rights were violated because the search warrant issued for his vehicle and the search warrant issued for his residence were not supported by probable cause. (Doc. No. 1 at 5-6).

The State objects to the consideration of these claims, arguing it is barred under the doctrine established by Stone v. Powell, which held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976) (footnote omitted).

The State's objection is well-taken. Under the Court's holding in Stone, a state court's disposition of a Fourth Amendment claim is barred from federal habeas review unless: (1) "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim;" or (2) "the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994). "[A] 'mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.'" Chavez v. Weber, 497 F.3d 796, 802 (8th Cir. 2007) (quoting Capellan v. Riley, 975 F.2d 67, 71 (2nd Cir. 1992)).

On November 30, 2011 Wacht filed a motion to suppress the evidence seized pursuant to the search warrants issued for his vehicle and residence. (Ex. 6). A hearing on the motion to suppress was held on January 19, 2012. (Ex. 10). Subsequently, the trial court filed a memorandum and order denying Wacht's motion to suppress, finding that there was probable cause to support the search warrants for Wacht's van and residence. (Ex. 11). Wacht then appealed the trial court's decision to the North Dakota Supreme Court, which concluded that the trial court did not error by refusing to suppress evidence found in Wacht's van and residence. Wacht I, 2013 ND 126, ¶¶ 10-21.

Wacht does not allege nor does the record reflect that he was precluded from using the state's corrective process or that there was a breakdown in the process. The court held a full hearing on Wacht's motion to suppress where his attorney extensively cross-examined the State's witnesses. (Ex. 10). Wacht's argument is simply that he disagrees with the trial court's decision not to suppress the evidence. The record is clear that the State provided Wacht opportunity for full and fair litigation of his Fourth Amendment claims. Consequently, they must be denied.

**B.      Ground three: denial of the right to a fair trial and impartial jury**

The third allegation in Wacht's habeas petition is that his right to a fair and impartial jury trial was violated because the trial judge did not remove for cause several potential jurors whose personal circumstances/relationships would lead a reasonable person to believe that a significant risk of bias was possible, including one juror who was a distant collateral relative of the victim. (Doc. No. 1 at 8).

Wacht's appeal counsel did not present this issue to the North Dakota Supreme Court in the appellant's brief on direct appeal. However, Wacht raised the issue himself in his supplemental *pro se* brief. (Ex. 24). Wacht argued that fifteen potential jurors were not excused for cause who

"clearly stated their prejudice towards him."  (Id. at 10).  Of these fifteen potential jurors, only five

of them were seated on the jury and one was seated as an alternate.  (Ex. 43 at 364).[2]  And, of these

five, Wacht's trial counsel challenged only Juror  W*** for cause, which challenge was denied.

The Sixth Amendment guarantees all those accused of a crime the right to be tried by an

impartial jury.  "This 'constitutional guarantee has not been granted if any member of the jury was

biased.'"  U.S. v. Johnson, 688 F.3d 494, 500 (8th Cir. 2012) (quoting Johnson v. Armontrout, 961

F.2d 748, 751 (8th Cir. 1992)).  "Due process means a jury capable and willing to decide the case

solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences

and to determine the effect of such occurrences when they happen." ( Id. at 752).  "For habeas

corpus purposes, such 'bias may be found either by an express admission, or by proof of specific

facts which show such a close connection to the facts at trial that bias is presumed.'"  Fuller v.

Bowersox, 202 F.3d 1053, 1056 (8th Cir. 2000) (quoting Burton v. Johnson, 948 F.2d 1150, 1158

n. 10 (10th Cir. 1991).  Whether a juror is biased against the defendant is a question of fact, and [a

habeas court] will defer to the state court's finding "if it is fairly supported by the record."  Williams

v. Norris, 612 F.3d 941, 954 (8th Cir. 2010); Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005);

Mack v. Caspari, 92 F.3d 637, 642 (8th Cir. 1996).  A demonstration of actual bias requires an

impermissible affirmative statement; an "equivocal" statement is insufficient.  Norris, 612 F.3d at

954-955; Mack, 92 F.3d at 642.

With respect to Juror W*** the North Dakota Supreme Court concluded that:

Of the five members of the jury Wacht challenges on appeal, he challenged one for
cause at trial.  That juror was challenged for cause at trial because one of his siblings
was murdered.  He was also distantly related to Johnson through marriage, but did

---

[2]  The alternate juror replaced one of the 5 jurors midway through the trial.  (See Ex. 23 at ¶ 75).

> not know Johnson personally. The juror's answers to questions did not indicate he
> held any actual or implied bias against Wacht. Furthermore, "[i]t is sufficient if the
> juror can lay aside his impression or opinion and render a verdict based on the
> evidence presented in court." State v Olson, 290 N.W.2d 664, 667 (N.D. 1980)
> (quoting Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)).
> The district court did not abuse its discretion by refusing to disqualify this juror.

Wacht I, 2013 ND 126, ¶¶ 27-28. This finding, that Juror W***'s answerers did not establish actual

or implied bias, is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); see Krutilek v.

Kenney, 125 Fed.Appx. 93, 94 (8th Cir. 2005) ("Kenny"); see also Williams v. Norris, 612 F.3d 941,

954-955 (8th Cir. 2010).

    Turning to the record of the voir dire, the following colloquy occurred between Wacht's trial

counsel and Juror W***:

> MR. MOTTINGER: I understand based on your questionnaire that you were – kind
> of had an unfortunate circumstance occur in your family some years ago?
>
> MR. W***: Yes, I did.
>
> MR. MOTTINGER: Would that make it difficult for you to sit as a juror on a case
> like this?
>
> MR. W***: In some ways, yes.
>
> MR. MOTTINGER: Have you followed this at all on television, radio, news?
>
> MR. W***: Oh, yea, you hear about it.
>
> MR. MOTTINGER: Did you know Mr. Johnson?
>
> MR. W***: I knew who he was. I did not know him.
>
> MR. MOTTINGER: What about his family?
>
> MR. W***: Yes, I know his family. Some of them.
>
> MR. MOTTINGER: Some of them. Does that cause you any particular degree of
> difficulty?

MR. W***: In how so do you mean difficult in? I don't quite understand.

MR. MOTTINGER: Well, the fact that you know Mr. Johnson's family, or know some of his family, would that cause you to lean toward the State?

MR. W***: Possibly, yes.

MR. MOTTINGER: And if you're chosen to act as a juror, you're going to get an instruction that sympathy can play no part in your verdict. And we realize that this is a difficult situation, it's a small community, everybody knows each other. Do you believe you could put that aside?

MR. W***: Possibly, yes.

MR. MOTTINGER: I believe you indicated you have some family members that were related to Mr. Johnson as well.

MR. W***: Yes.

MR. MOTTINGER: A cousin?

MR. W***: Right.

MR. MOTTINGER: If you had to go in the jury room right now and return a verdict, what would your verdict be?

MR. W***: Based on strictly media coverage?

MR. MOTTINGER: Well, right now knowing nothing else, if you had to go in that room with 12 people what would your verdict be?

MR. W***: That's – without hearing any evidence I would have a hard time making a judgment – for or against anyone.

MR. MOTTINGER: But you understand as he sits here right now he is presumed to be innocent?

MR. W***: Correct.

MR. MOTTINGER: Does the fact that he was arrested, charged with this crime, cause you to have any leanings one way or the other?

MR. W***: No.

MR. MOTTINGER: And again, referring back to your family situation, you had a – I think it was a sibling that was involved in a similar situation, does that – would that – you indicated that would make it difficult for you to sit as a juror.

MR. W***: I believe so, yes.

MR. MOTTINGER: Would it make it harder for you to be fair and impartial?

MR. W***: I believe so, yes.

MR. MOTTINGER: Would you favor the State more or the defendant based on that experience?

MR. W***: Possibly the State, but I'm not sure either.

MR. MOTTINGER: Okay. Taking everything we talked about so far, do you believe you could be fair and impartial?

MR. W***: I honestly don't know.

(Ex. 42 at 68-71). On re-examination by the prosecutor, Juror W*** gave the following answers.

MR. BYERS: I think I heard you say that the fact that he's been arrested and charged means nothing, you'd be able to put that aside and that doesn't mean he's guilty?

MR. W***: Correct.

MR. BYERS: You have heard thing but you think you could put those things aside?

MR. W***: Yes.

MR. BYERS: If you had to vote you might favor the State but you're not sure. And I think your answer still was even though you still have some inclinations like that, if the Judge instructed you you've got to start from scratch and make us prove your – make us prove the case, you're willing to make us prove that?

MR. W***: Yes.

(Ex. 42 at 82-83).

In considering this examination, although Juror W*** expressed concern initially about his ability to be fair and impartial because one of his siblings had been murdered, he did state: (1) he understood Wacht was presumed to be innocent; (2) the fact that Wacht was arrested and charged

with the crime did not cause him to lean one way or another; (3) he could put things he had heard about the case aside; and (4) he was willing to make the state prove their case. (Ex. 42 at 68-82). Given this and the presumption of correctness that must be given to the North Dakota Supreme Court's determination of no actual bias, it cannot be concluded that its decision on this point was an unreasonable determination of the facts.

Wacht also argues that bias should be presumed in this case because Juror W*** was a relative of the victim. "[P]resumed bias is reserved for extreme cases, such as when a juror is a close relative of a party or victim in the case." U.S. v. Tucker, 243 F.3d 499, 509 (8th Cir. 2001); see Allen v. Brown Clinic, P.L.L.P., 531 F.3d 568, 573 (8th Cir. 2008) (finding that the relatively distant familial connection did not rise to presumed bias); see also Kenney, 125 Fed.Appx. at 94 (finding that a juror who was friends with the victim's daughter was not presumed to be bias). Juror W*** indicated that his cousin was related to the victim, but that he did not personally know the victim. (Ex. 42 at 82-83). Juror W***s' distant relationship with the victim does not warrant a presumption of bias.

In regard to the other jurors that were not challenged for cause, the North Dakota Supreme Court concluded the following:

> Because he did not challenge the other jurors for cause, Wacht must show obvious error under N.D.R.Crim.P. 52(b), which allows this Court to correct obvious errors even if they were not raised to the trial court. Wacht challenges the other jurors because they all expressed some preconceived notion of his guilt. Each juror gave answers in voir dire by which the judge could have concluded the juror would be able to lay aside his or her impression and render a verdict based on the evidence. An alleged error is not obvious error unless it is a clear deviation from the applicable legal rule. The trial court did not clearly deviate from the applicable legal rule. Wacht's right to an impartial jury was not violated.

Wacht I, 2013 ND 126 ¶¶ 27-28. In reviewing the transcript of the voir dire, it does appear that each of the remaining jurors did indicate that they could lay aside their initial impressions and render a

verdict based on the evidence.  (Ex. 42 at 62-64; 68-69; 85-86; 171-73; 181; 277; 285; and 332).

Again, given this and the presumption of correctness, the North Dakota Supreme Court's

determination that there was no actual or implied bias with respect to the remaining jurors was

reasonable.

In summary, it is recommended that Wacht's third claim for relief be denied.

### C.    Ground four: evidence presented in violation of due process

Wacht asserts in his fourth ground for relief that evidence was presented in violation of state

and federal criminal procedure rules and in violation of his right to due process.  Wacht alleges that

the State presented evidence at trial that was not listed on the search and seizure inventories and

without prior explanation as to how or where the evidence was discovered.  (Doc. No. 1 at 9).

The State contends that Wacht's appeal counsel did not argue this issue in the appellant's

brief in the direct appeal.  (Ex. 22).   However, Wacht presented this issue in his Rule 24

Supplemental Pro Se Brief.  (Ex. 24).  In that brief, Wacht claimed that "Item 26 on the evidence

receipt (Exhibit D), labeled "used rubber glove black", was admitted into evidence as States exhibit

#135 with no objection under that description.  When the evidence envelope was opened for the

court it in fact contained <u>two</u> rubber gloves."  (Ex. 24 at 9).  Wacht claimed that the prosecution

violated N.D.R.Crim.P. 16(c) because it failed to disclose the existence of an extra glove and the

circumstances under which it was discovered. (Id.).   While the North Dakota Supreme Court did

not address this issue explicitly, it appears it did deny the claim on the merits when it stated: "[w]e

hold the remaining arguments raised in the Supplemental Brief of Indigent Defendant are without

merit." <u>Wacht I</u>, 2013 ND 126, ¶29.

The State also argues that Wacht did not fairly present this claim to the North Dakota Supreme Court as a separate federal constitutional claim and therefore it fails for lack of exhaustion. This argument has merit.

In order for a federal claim to be fairly presented, " a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, or a state case raising a pertinent federal constitutional issue. Presenting a claim that is merely similar to a federal habeas claim is not sufficient to satisfy the fairly presented requirement." Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005) (quoting Barrett v. Acevedo, 169 F.3d 115, 1161-62 (8th Cir.), *cert. denied*, 528 U.S. 846, 120 S.Ct. 120, 145 L.Ed.2d 102 (1999). Here, Wacht only presented his "evidence disclosure and handling" claim to the North Dakota Supreme Court as a violation of N.D.R.Crim.P. 16(c). Consequently, he failed to properly exhaust the *federal* claim he attempts to make here and, more importantly, this claim has now been procedurally defaulted under the authority cited earlier.

Wacht argues that any procedural default should be excused because, although he was represented by counsel on direct appeal, he had to raise the issue in a *pro se* supplemental brief due to the fact his attorney did not raise it. This alone does not excuse him from having failed to properly present his federal claim, however. See, e.g., Vasquez v. Lockhart, 867 F.2d 1056, 1058 (8th Cir. 1988) (habeas petitioner's "pro se status and lack of familiarity with the American language and court system do not constitute cause under the Wainwright standard").

Wacht also argues that he was not allowed to participate in oral argument, contending:

> In denying me the opportunity to participate in oral arguments regarding my issues, the State denied me the chance to fully present and argue all aspects of my claim which is why this, and all other issues I raised in direct appeal, pro se, should not be barred from being heard by this court.

(Doc. No. 12 at 5). Wacht's suggestion here that he would have presented his federal claim during oral argument, however, is unavailing because it is well settled that the North Dakota Supreme Court

will not consider on appeal issues raised for the first time at oral argument. <u>Paulson v. Paulson</u>, 2011 ND 159, ¶ 9, 801 N.W.2d 746; <u>Cavendish Farms, Inc. v. Mathiason Farms, Inc.</u>, 2010 ND 236, ¶ 5, 792 N.W.2d 500.

Moreover, even if Wacht properly presented this claim as a federal constitutional claim, it would fail.  In order to establish a denial of due process Wacht must show that the asserted error was so "gross" or "conspicuously prejudicial" that it "fatally infected the trial and failed to afford [him] the fundamental fairness which is the essence of due process." <u>Maggitt v. Wyrick</u>, 533 F.2d 383, 385 (8th Cir. 1976).  Based on the evidence characterized by the North Dakota Supreme Court and a careful review of the record, the admission of the gloves did not result in fundamental unfairness, and no violation of due process occurred.

In summary,  Wacht's fourth claim for relief should be denied.

**D.      Ground five: ineffective assistance of trial counsel**

**1.      Governing law**

Under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), a defendant who claims ineffectiveness of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defendant.   In regard to this analysis the Court explained in <u>Strickland</u> that:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [any particular] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

<u>Strickland</u>, 466 U.S. at 697.

The test for deficient performance under the "first Strickland prong" is whether counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Id. at 688; Rompilla v. Beard, 545 U.S. 374, 380 (2005). When the issue involves a matter of trial strategy, there is a strong presumption that the strategy was sound and was not ineffective assistance. See Bell v. Cone, 535 U.S. 685, 698-702 (2002).

Under the "second Strickland prong," prejudice is only shown when there is a "*reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" E.g., Woodford v. Visciotti, 537 U.S. 19, 22 (2002) (per curiam) (quoting Strickland, 466 U.S. at 694 and adding emphasis). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 23 (quoting Strickland, 466 U.S. at 694).

When a state court has addressed a petitioner's ineffective-assistance claims on the merits and applied the Strickland test, a federal court must accord the state court's determination the deference required by 28 U.S.C. § 2254(d). Rompilla, 545 U.S. at 380. Assuming there are no issues with respect to the state court's findings of fact, the federal court's review is limited to the determination of whether the habeas petitioner has met the burden of proving that "the state court applied Strickland to the facts of his case in an objectively unreasonable manner." Woodford, 537 U.S. at 25; see also Rompilla, 545 U.S. at 380. The Supreme Court has characterized the application of the Strickland standard through the prism of AEDPA as amounting to a "doubly deferential" standard of review. E.g., Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

### 2. Wacht's IATC claim that was not presented to the state courts

The first claim of ineffective assistance of trial counsel ("IATC") that Wacht makes in his habeas petition is that his trial attorney failed to effectively argue to have potential jurors with relationships to the victim and the victim's family removed for cause. (Doc. No. 1 at 5). The State

argues that this IATC claim was not presented during the state court proceedings to the extent it relates to jurors other than Juror W\*\*\* and that, as a consequence, the court must reject the claim because of a lack of state court exhaustion, and, more importantly, procedural default based on the state law prohibition against misuse of process discussed earlier.

A careful review of the record, including Wacht's *pro se* application for postconviction relief (Ex. 27), his *pro se* supplement to the postconviction application (Ex. 29), his second supplement to application for postconviction relief filed by counsel (Ex. 32), and his appeal brief in Wacht II (Ex. 39), it appears the State's objection is well-taken. While Wacht did raise an IATC claim with respect to Juror W\*\*\* that will be discussed separately below, he did not raise the claim that his trial counsel was ineffective in failing to object to the seating of other jurors.

Wacht relies on Martinez v. Ryan, 132 S.Ct. 1309 (2012) in arguing that this claim does not fail for lack of exhaustion because his application for postconviction relief and supplement to that application were done *pro se* and his application was summarily dismissed without an evidentiary hearing in which he was able to fully argue his claims. (Doc. No. 12 at 7). In Martinez, the Supreme Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Id. at 1320. Wacht's Martinez argument fails because he was appointed and represented by counsel in the postconviction proceeding[3] and Wacht has not claimed that his postconviction attorney was

_____

[3] Although Wacht did file his application for postconviction relief (Ex. 27) and his first supplement to the postconviction application (Ex. 29) *pro se*, he was subsequently appointed counsel to represent him in this matter. His attorney filed a second supplement to the application for postconviction relief on June 2, 2014 (Ex. 32) and a response to the respondent's motion for summary disposition (Ex. 36) on August 21, 2014.

ineffective.  Consequently, this claim of IATC need not be considered as it has been procedurally defaulted.

### 3.    Wacht's remaining ineffective assistance claims

#### a.    State court proceedings

Wacht's remaining two claims of IATC are that his trial attorney failed to: (1) take the necessary steps to remove the juror who had a familial relationship to the victim and who was the subject of his direct Sixth Amendment claim; and (2) effectively argue against the admittance of evidence by the State which was not listed on the search and seizure inventory in violation of chain of custody procedure and its continuing duty to disclose evidence.  (Doc. No. 1 at 5).

After Wacht filed his application for postconviction relief and supplement to the postconviction application, he was appointed counsel, who then filed a second supplement to the postconviction application.  The State answered and moved for summary disposition pursuant to N.D.C.C. § 29-32.1-06(2), which provides as follows:

> The state may move to dismiss an application on the ground that it is evident from the application that the applicant is not entitled to postconviction relief and no purpose would be served by any further proceedings.  In considering the motion, the court shall take account of substance regardless of defects of form.

The state also raised the defense of res judicata pursuant to N.D.C.C. § 29-32.1-06(3) and N.D.C.C. § 29-32.1-12(1) arguing that these issues were fully and finally adjudicated by the North Dakota Supreme Court in Wacht's direct appeal.  Wacht filed a response in opposition to the States's motion for summary disposition contending that a hearing should be held on his petition. (Exs. 27-36).

The district court rejected Wacht's request for a hearing and summarily dismissed his application for postconviction relief.  (Ex. 37).  Wacht appealed the summary disposition of his application for postconviction to the North Dakota Supreme Court, asserting that the district court erred in granting the State's motion for summary disposition and dismissing Wacht's application for

postconviction relief. (Ex. 39). The North Dakota Supreme Court affirmed the district court's decision to dismiss Wacht's application for postconviction relief, concluding that the postconviction court's use of the summary disposition procedure was appropriate because the issues relating to Wacht's ineffective assistance of counsel claims were raised on direct appeal and were subject to res judicata. Wacht II, 2015 ND 154 at ¶ 7. These two claims will be discussed in more detail below.

### b.    Failure to take necessary steps to remove Juror W***

Wacht's second claim of IATC alleges that his trial counsel: "failed to challenge Juror [W***] on a clearly defined issue for cause as described in N.D.C.C. 29-17-36 and N.D.C.C. 28-14-06. Juror [W***] was in fact a member of the victim's family and therefore by North Dakota law is said to have an implied bias and would have been unqualified to be a juror." (Doc. No. 12 at 8). Wacht argues that by not raising the proper issues and allowing a family member of the victim to sit on the jury, his trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced. (Id.).

The district court summarily dismissed this claim, concluding that "[t]he issue was raised on Wacht's direct appeal and rejected. State v. Wacht, 2013 ND 126 ¶ 27. Because this claim was fully and finally determined in a previous proceeding, it is res judicata." (Ex. 37 at ¶ 4). The North Dakota Supreme Court affirmed the district court's decision to dismiss this claim, concluding that "[w]e specifically discussed and rejected Wacht's claim that the district court erred in refusing to disqualify a juror who was distantly related to Johnson through marriage . . . [w]e conclude the district court did not err in summarily dismissing Wacht's ineffective assistance of counsel claims on the basis of res judicata." Wacht II, 2015 ND 154, at ¶ 9. And, while the court did not explain why its prior decision was res judicata, it appears to have been the conclusion that its prior

determination that Juror W*** was not biased in fact or impliedly in <u>Wacht I</u> foreclosed Wacht's IATC claim.

To prevail on a claim of ineffective assistance of counsel for the attorney's failure to strike a juror as biased, a habeas petitioner must show that the juror was actually biased. <u>United States v. Tucker</u>, 243 F.3d 499, 509 (8th Cir. 2001); <u>Goeders v. Hundley</u>, 59 F.3d 73, 75 (8th Cir. 1995); <u>but cf.</u> <u>Sanders v. Norris</u>, 529 F.3d 787, 791-94 (8th Cir. 2008) (while not deciding whether proving presumed or implied bias might in some cases be sufficient, the court noted that such instances would be reserved for extreme cases, such as when a juror is a close relative of a party or victim in the case). This being the case, Wacht's IATC claim with respect to Juror W*** fails on the merits since the North Dakota Supreme Court's conclusion, that its earlier determination Juror W*** was not actually or implied biased was res judicata for purposes of Wacht's postconviction proceeding, is neither contrary to nor an unreasonable application of prior United States Supreme Court precedent.

c. **Failure to argue against the admittance of evidence by the State which was not listed on the search and seizure inventories**

Wacht also argues that his trial counsel was ineffective for failing to object to the admission of certain evidence. Wacht specifically argues that trial counsel was ineffective in that he did not object to the admission of the gloves on the specific ground that the second glove was not listed on the search and seizure inventory in violation of chain of custody procedure and rule of continuing duty to disclose evidence. Wacht further argues that he was prejudiced by this because:

> "There was absolutely no documentation to show where this extra glove came from. This glove is so important because it is the only thing the State has which shows only the presence of two D.N.A. profiles, my own and the victims. Other items of evidence show the presence of an unknown contributors D.N.A. so this glove is a critical aspect of the State's case. That is to prove that I am the guilty party and not this third unknown person."

(Doc. No. 12).

The North Dakota Supreme Court affirmed the district court's rejection of this claim stating:

> Wacht also argued about the admission of a pair of latex gloves at trial in his supplemental brief on appeal, which was rejected by this Court. . . . [Wacht I, 2013 ND 126 ¶ 29]. We conclude the district court did not err in summarily dismissing Wacht's ineffective assistance of counsel claims on the basis of res judicata."

Wacht II, 2015 ND 154, ¶ 9. However, this ground for rejecting the claim is questionable for two reasons. First, it appears clear that the district court did not dismiss this claim on grounds of res judicata as will be discussed more fully in a moment. Second, and more importantly, while res judicata was an appropriate reason for denial of the IATC claim with respect to Juror W*** given the elements that must be satisfied for an IATC claim with respect to an allegedly biased juror, the undersigned is not so sure that is the case here.

The court need not struggle over whether the grounds relied by the North Dakota Supreme Court for dismissing this claim was appropriate because, under <u>Richter</u>, this court can dismiss a claim upon any basis that could have been relied upon by that court in dismissing the claim on the merits. <u>See</u> <u>Richter</u>, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."); <u>Addai v. Schmalenberger</u>, 776 F.3d 528, 532 (8th Cir. 2015) ("Our habeas review is not constrained to the explicit reasoning in the opinion and we 'must determine what arguments or theories supported or ... could have supported, the state court's decision.'") (quoting <u>Richter</u>). And here, the ground relied upon by the district court in dismissing this claim provides that basis.

It appears clear that the district court rejected Wacht's IATC claim involving the latex gloves because of its determination that Wacht had failed to satisfy the second prong of <u>Strickland</u> of

demonstrating any prejudice resulting from alleged ineffective assistance. More specifically, the

district court stated:

> [¶ 3] While summary dismissal generally is not appropriate for postconviction claims of ineffective assistance of counsel, it is appropriate if the petitioner does not raise a genuine issue of material fact. Klose v. State, 2008 ND 143, ¶ 9. To avoid summary dismissal of an ineffective assistance of counsel claim, the postconviction applicant must present some evidence that his counsel's performance fell below an objective standard of reasonableness, and he must overcome the presumption that his counsel's performance was within the broad range of reasonableness." Id. at ¶ 13. The petitioner must specify how and where counsel was incompetent and the probable different result. Id. A petitioner's failure to show how, but for the attorney's errors, the results of the proceedings would have been different justifies a district court's decision to summarily dismiss the ineffective assistance of counsel claims. Hughes v. State, 2002 ND 28, ¶ 7. Wacht is entitled to all reasonable inferences and an assumption that his evidentiary assertions are true. Ude v. State, 2009 ND 71 ¶ 9. To defeat the state's motion for summary dismissal, Wacht must present evidence supporting his claims or raising an issue of material fact that his counsel's performance was deficient and his counsel's deficient performance prejudiced the defendant. See Strickland v. Washington, 466 U.S. 668, 687 (1984) (providing the analytical framework for ineffective assistance claims).

* * * *

> [¶ 5] Wacht's second claim of ineffective assistance of counsel relates to admission at trial of a pair of gloves. On direct appeal, the evidence against Wacht was characterized as "overwhelming." Id. ¶ 26. Wacht fails to articulate a theory as to how, without the gloves, a jury might have found reasonable doubt in light of the other evidence against him:

>> Wacht was the last person seen with Johnson. DNA evidence that could not exclude Kurt Johnson was found on a spent 9mm casing that was fired from Wacht's gun, the cushion found in Wacht's laundry room, Wacht's sofa matching the cushion, a boot in Wacht's home, the exterior of a pair of gloves, a sponge in a garbage bag in Wacht's laundry room, and a belt suspected to be Johnson's. Wacht's DNA was found on the inside of the boots and the gloves. Johnson's decapitated head was found buried in the crawl space underneath Wacht's home. The jacket of a 9mm bullet was removed from the wound in Johnson's head. The bullet could have been fired from Wacht's firearm, and was consistent with ammunition that Wacht possessed for his 9mm Glock pistol.

> [quoting from Wacht I, 2013 ND 126, ¶ 29]

(Ex. 37 at ¶¶ 3 and 5).

As stated previously, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. In order to demonstrate prejudice, Wacht must show there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. Id. at 694.

Here, the district court's conclusion that Wacht had failed to satisfy the second Strickland prong was reasonable in light of the factual determinations made by the state courts, including the North Dakota Supreme Court having twice described the evidence against Wacht as overwhelming, see Wacht II, 2015 ND 154, ¶¶ 13-15; Wacht I, 2013 ND 126, ¶ 29. Consequently, it is recommended that this claim of IATC be denied.

## IV.    CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. When the court has rejected a petitioner's claim on the merits, the substantial showing required is that the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)); see also United States v. Lambros, 404 F.3d 1034, 1036-37 (8th Cir. 2005); Garrett v. United States, 211 F.3d 1075, 1076 - 1077 (8th Cir. 2000). When the court denies a petitioner's claim on procedural grounds without reaching the merits, the petitioner must demonstrate that reasonable jurists would find it debatable that a valid claim for the denial of constitutional rights has been stated and that the district court was correct in its procedural ruling. Slack, 529 U.S. at 484.

In this case, reasonable jurists would not find debatable the dispositions of the claims, whether on the merits or on procedural grounds. Consequently, it is recommended that the court not issue a certificate of appealability.

## V. RECOMMENDATION

Based on the foregoing, it is **HEREBY RECOMMENDED:**

1. Respondent's Motion to Dismiss Wacht's Petition (Doc. No. 7) be **GRANTED;**

2. Wacht's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Docket No.1) be **DENIED**; and

3. A certificate of appealability not be issued.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 25th day of March, 2016.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr., Magistrate Judge
United States District Court